Filed 12/13/24  P. v. Haulcy CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>ERIC ALLEN HAULCY,<br><br>　　Defendant and Appellant. | D082828<br><br><br>(Super. Ct. No. SCN348873) |

APPEAL from an order of the Superior Court of San Diego County, Lisa R. Rodriguez, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Liz Olukoya, Deputy Attorneys General, for Plaintiff and Respondent.


A jury convicted defendant Eric Allen Haulcy of driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a); count 1)

and driving with greater than .08 blood alcohol level causing injury (*id.*, subd. (b); count 2). It found multiple enhancements true, and Haulcy admitted a strike prior (Pen. Code,[1] §§ 667, subd. (b), 1170.12 & 668), a serious felony prior (§§ 667, subd. (a)(1), 668 & 1192.7, subd. (c)), and two prison priors (§§ 667.5, subd. (b) & 668). The trial court sentenced Haulcy to 22 years in prison. Haulcy would be resentenced twice, finally receiving a 14-year eight-month sentence.

The subject of this appeal is the second resentencing hearing occurring in August 2023, and how the trial court applied section 1385. Haulcy makes two contentions about the trial court's decision. First, he argues there is a lack of substantial evidence to support the trial court's finding that dismissal of the great bodily injury and/or multiple victim enhancements would "endanger public safety." (§ 1385, subd. (c)(2).) Second, Haulcy argues the court erred when it did not "afford great weight" to his evidence supporting one or more of the enumerated mitigating circumstances, which would have resulted in a further reduction to his sentence. (*Ibid.*)

We conclude substantial evidence supports the trial court's finding that dismissing any of the enhancements in this case would "endanger public safety." (§ 1385, subd. (c)(2).) Because striking an enhancement would not, in these circumstances, be in "furtherance of justice" (*id.*, subd. (c)(1)), we deem it unnecessary to decide Haulcy's second contention. We therefore affirm the resentencing order.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of August 3, 2015, witnesses observed Haulcy swerving back and forth between lanes as he slowly drove down Oceanside Boulevard. He suddenly accelerated to 55 miles per hour, crossed over the median, and struck a Mazda being driven by Nathanael Shiel. This caused Haulcy's car to flip over and the Mazda to spin out of control. The Mazda collided with a Toyota pickup being driven by Shannan Waters.

The accident caused serious injuries. Emergency personnel extracted Haulcy from his car and airlifted him to a hospital. Haulcy's passenger, Xavier Montgomery, sustained a cut around his eye. Shiel was also airlifted to a hospital and placed in a medically induced coma for several days due to respiratory failure caused by traumatic brain injury. Additionally, he sustained fractures to his femur, patella, wrist, and face, and lacerations to internal organs. Shiel's wife, Peri Meehan-Rappaport, sustained a concussion, abdominal contusions, and a large laceration on the back of her head. Waters sustained three broken ribs, a broken cheekbone, and cuts on her face.

After the March 2017 trial, a jury found Haulcy guilty on counts 1 and 2 and made the previously described true findings on enhancements. Haulcy also admitted a strike prior, serious felony prior and two prison priors. Following imposition of his initial 22-year sentence, Haulcy appealed, and we subsequently affirmed his convictions. (*People v. Haulcy* (Mar. 1, 2019, D072701) [nonpub. opn.].)[2] However, the Supreme Court returned the case to us after granting Haulcy's petition for review based on Senate Bill No. 1393 (2017–2018 Reg. Sess.), allowing sentencing courts discretion to

---

[2] Our original opinion was filed October 9, 2018.

dismiss serious felony priors.[3]  In turn, we vacated the sentence and remanded for what would be the first resentencing.  At the July 2019 hearing, the trial court struck the serious felony prior and imposed the previously stayed one-year prison prior, for a new term of 18 years.

On October 31, 2022, following California Department of Corrections and Rehabilitation's identification of Haulcy as a person serving a prison term including a now invalid one-year prison prior enhancement, the trial court again recalled Haulcy's sentence.  (§ 1172.75, subd. (b).)[4]  This resulted in Haulcy's second sentencing hearing, at which the trial court struck the two one-year prison priors (§ 1172.75, subd. (a)).  The trial court also conducted a full resentencing of the matter (*People v. Monroe* (2022) 85 Cal.App.5th 393, 401–402), reducing the previously imposed midterm sentence on count 1 to the low term of 16 months, doubled by the strike, and reimposed the remaining sentence, for a new term of 14 years eight months.

## DISCUSSION

A. *Standard of Review*

"In general, we review for abuse of discretion the trial court's decision not to strike a sentence enhancement under section 1385, subdivision[s (a) and (c)]."  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).)  "A trial court abuses its discretion when its ruling 'falls "outside the bounds of reason." ' "  (*People v. Waidla* (2000) 22 Cal.4th 690, 714.)  Under an abuse of discretion standard, we examine a trial court's factual findings for substantial evidence.  (See *In re Harris* (2024) 16 Cal.5th 292, 319.)  Applying

---

[3]    The Supreme Court remanded the case to us on January 2, 2019.

[4]    Senate Bill No. 483 (2021–2022 Reg. Sess.) added section 1171.1, later renumbered section 1172.75.

this test, we find no abuse of discretion because substantial evidence supported the trial court's findings.

B. *Substantial Evidence Supports the Trial Court's Sentencing Decision*

Section 1385, subdivision (c)(1) authorizes a court to dismiss an enhancement "if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." "In exercising its discretion under this subdivision, the court shall afford great weight to evidence offered by the defendant to prove that any of the [nine] mitigating circumstances in subparagraphs (A) to (I) are present." (*Id.*, subd. (c)(2).) Proof of such circumstances "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal . . . would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*)

If the trial court finds dismissal of an enhancement " 'would endanger public safety,' " then it need not even consider the list of mitigating circumstances. (*Mendoza, supra*, 88 Cal.App.5th at p. 297 ["consideration of the mitigating factors in section 1385[, subdivision ](c)(2) is not required if the court finds that dismissal of the enhancement would endanger public safety"]; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18 (*Lipscomb*) [because the trial court found that dismissal of the enhancement would "endanger public safety," it "was not required to 'consider and afford great weight' to evidence that application of the enhancement could produce a sentence of over 20 years" under mitigating circumstance § 1385, subd. (c)(2)(C)].)

We conclude substantial evidence supports the trial court's finding that dismissal of the great bodily injury and/or the multiple victim enhancements

5

would "endanger public safety." (§ 1385, subd. (c)(2); see *People v. Alvarez* (2014) 229 Cal.App.4th 761, 774 [substantial evidence exists if, reviewing the " 'record in the light most favorable to the judgment,' " " ' " ' " 'the circumstances reasonably justify the trier of fact's findings' " ' " ' "]; see also *People v. Manibusan* (2013) 58 Cal.4th 40, 87 [" 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " ' " the factfinder's decision].) In reaching its decision, the court considered Haulcy's criminal history, the seriousness of his offenses, and postconviction factors including his disciplinary record and record of rehabilitation while incarcerated.

Regarding his criminal history, at the August 2023 postconviction resentencing hearing the trial court noted that shortly after Haulcy turned 18 years old in June 2009, he and a codefendant robbed two men at gunpoint. During the robbery, Haulcy pulled out a gun, chambered a bullet, and then pointed the firearm at the head of one of the victims while demanding money. Haulcy then used his gun to hit the other victim in the face. Haulcy pleaded guilty to robbery, admitted the gun allegation, and was sentenced to three years in state prison.

The trial court also observed that in June 2013, Haulcy was arrested for being in possession of a firearm while on probation. During a traffic stop, officers found a loaded, .38-caliber gun under the driver's seat. Haulcy pleaded guilty and the trial court sentenced him to 32 months in state prison.

Turning to the seriousness of the instant offense, the trial court discussed injuries to the victims and that Haulcy was on probation when the crime occurred. At the hospital, testing revealed Haulcy's blood alcohol concentration was .13. At trial, an expert opined that at the time of the

6

collision, Haulcy's blood alcohol concentration was between .15 and .17, or about twice the per se driving limit.  Haulcy also admitted using methamphetamine on the day of the accident.  The trial court also discussed that during his probation interview while Haulcy was "apologetic" and "took responsibility" for what happened, Haulcy also "said he was bitter about the system, the potential consequences, and that this had just been an accident."

However, the trial court balanced these observations against several postconviction factors.  The court found Haulcy "engaged in a significant amount of programming [while in prison] since 2019" and completed several college courses, which the court found commendable.  But the trial court also concluded Haulcy had myriad rule violations while incarcerated, including multiple instances when he was found with a cellphone.  The court noted many of these incidents involved "planning and sophistication," including his hiding a cellphone in a book, a coffee container, inside a bucket under his desk in his cell, and between a blanket and pillow on his bunk.  The court found Haulcy "flout[ed]" the prison rules and "continue[d] to make poor decisions," giving it concern that he would not follow the rules when released.

On this record we conclude substantial evidence supports the trial court's finding that further reducing Haulcy's sentence, by dismissing the great bodily injury and/or multiple victim enhancements, would "endanger public safety" (§ 1385, subd. (c)(2)), resulting "in physical injury or serious danger to others" (*ibid.*).  We therefore conclude it is unnecessary to resolve Haulcy's alternate contention that the court allegedly erred in failing to "afford great weight" to the evidence he proffered to uphold one or more of the mitigating circumstances "in the furtherance of justice."  (*Id.*, subd. (c)(1) & (2); see *Mendoza, supra*, 88 Cal.App.5th at p. 296 ["the language of all of the listed mitigating circumstances . . . applies only if the court does *not* find that

7

dismissal of the enhancement would endanger public safety"]; *Lipscomb*, *supra*, 87 Cal.App.5th at p. 19 ["every version of [section 1385]—including, as we conclude, the current one—expressly empowered the court to impose the enhancement upon a finding that dismissing it would endanger public safety"]; see also *People v. Walker* (2024) 16 Cal.5th 1024, 1033 ["emphasiz[ing] . . . that in most cases, 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)" of § 1385], quoting *Mendoza*, at p. 297, fn. 6.)

DISPOSITION

The order is affirmed.


RUBIN, J.

WE CONCUR:


DO, Acting P. J.


BUCHANAN, J.

8